UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ERIC FLORES,                                          CIVIL NO. 15-1899 (JNE/JSM)

     Plaintiff,[1]

v.

                                      <u>REPORT AND RECOMMENDATION</u>

UNITED STATES
ATTORNEY GENERAL and
FEDERAL BUERAL [SIC]
OF INVESTIGATION,

     Defendants.


     This case is before the undersigned United States Magistrate Judge on plaintiff's application to proceed <u>in forma pauperis</u>, ("IFP"), as permitted by 28 U.S.C. § 1915(a)(1). [Docket No. 2].   The matter has been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1.   For the reasons stated below, it is recommended that plaintiff's IFP application be denied, and that this action be summarily dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) for frivolousness, and pursuant to 1915(e)(2)(B)(ii) because it fails to state a claim on which relief can be granted, venue in the District Court of Minnesota is improper, and for lack of personal jurisdiction.   Further, because of plaintiff's extensive history of filing frivolous suits in this court and around the country, it is also recommended that certain restrictions be placed on plaintiff's ability to file further suits in this District.

---

[1]     Flores has referred to himself as "Petitioner" and the United States Attorney General and the Federal Bureau of Investigation as "Respondents."   However, in civil matters the claimant is referred to as "plaintiff" and the person or entity being sued as "defendant."   Consequently, the Court has referred to Flores as "plaintiff" and the United States Attorney General and the Federal Bureau of Investigation as "defendants."

I.    **DISMISSAL OF SUIT**

An IFP application will be denied, and the action will be dismissed, if the applicant has filed a complaint that is "frivolous."   28 U.S.C. § 1915(e)(2)(B)(i).   A complaint is "frivolous," and therefore subject to dismissal under § 1915(e)(2)(B)(i), "where it lacks an arguable basis either in law or in fact."   Neitzke v. Williams, 490 U.S. 319, 325 (1989). See also Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).   Federal courts cannot summarily dismiss an action commenced by an IFP applicant if the facts alleged in the applicant's complaint are merely "unlikely."   Denton, 504 U.S. at 33.   However, an IFP action can properly be dismissed, sua sponte, if the allegations in the complaint are found to be "fanciful," "fantastic," or "delusional," or if they "rise to the level of the irrational or the wholly incredible."   Id., (citing Neitzke, 490 U.S. at 325, 328).   That is the case here.

For starters, the 63-page complaint[2] is virtually incomprehensible.   As best as the Court can discern, plaintiff claims that "an organized group of executive employees of the federal government" interfered with his First Amendment rights to free speech and to freely exercise his religious beliefs.

With respect to his freedom of speech claim, plaintiff appears to allege that he was wrongfully charged and convicted in El Paso, Texas, and when he attempted to challenge or appeal this conviction to the District Court, Fifth Circuit Court of Appeals, United States Supreme Court and Administrative Office of the United States Courts, certain actions were taken by an "organized group of executive employees of the federal government" in retaliation for his challenges, including:

---

[2]      This pleading has been labeled "Petition" and was filed in two parts, which have been docketed by the Clerk of Court as Docket Nos. 1 and 1-1.   In civil matters, the initial pleading filed by the complainant is called a "complaint" and not a "petition."   Thus, this Court will refer to Docket No. 1 as "Complaint 1" and Docket No. 1-1 as Complaint 1-1.

- impersonation of a campus police officer at the El Paso Community College and instigation of a physical altercation with him, which led to his incarceration for a crime he did not commit;

- impersonation of detention officers while he was in jail;

- while he was in jail, deprivation of soap to shower or a razor to shave, spitting on his meals, stealing or throwing away his legal mail;

- fabrication of legal documents;

- creation of courts of common law to simulate a legal process;

- causing him to have a heart attack and great pain equivalent to a nuclear explosion or the electric chair;

- causing the death of his uncle;

- bribery of postal employees to steal or throw away his legal mail;

- causing the death of the United States Postal supervisor to whom he complained about the confiscation of his legal mail; and

- fabricating autopsy reports regarding the deaths of his uncle and the postal employee.

Complaint 1, pp. 7-20.

Repeatedly, plaintiff alleged that this "organized group of executive employees of the federal government" accomplished these actions through "advanced technology with a direct signal to the satellite in outerspace [sic] that has the capability of calculateing [sic] a genetic code." Id., pp. 8, 9, 14-16, 19.

As for his First Amendment right to freely exercise his religious beliefs, plaintiff alleged throughout his Complaint that an "organized group of executive employees of the federal government" used "advanced technology with a direct signal to the satellite in

outerspace [sic] that has the capability of calculateing [sic] a genetic code" to do the following:

- take physical control of the minds of plaintiff and various family members (mother, brother, sister, uncle) to violate their religious beliefs and vows by forcing them to commit adultery;

- cause plaintiff to separate from his wife;

- cause his father and mother severe medical problems which forced his mother to have sexual intercourse with others;

- prevent plaintiff and his mother from pursuing criminal prosecution of the man with whom his mother had sexual intercourse;

- cause his brother to argue and fight with and divorce his first wife, to have sexual intercourse with another, to marry another who ultimately had sexual intercourse with another, to divorce his second wife, and ultimately to die;

- cause plaintiff, his brother and sister such mental pain that they were hindered from earning an educational degree;

- cause his sister's newborn child to defecate blood shortly after birth and her husband to commit suicide; and

- cause the death of each of plaintiff's four brothers every time his sister had a child.

Id., pp. 21-29; Complaint 1-1, pp. 1-34.

All of these allegations are nonsensical, contain no modicum of reality, and can only be deemed as "fanciful," "fantastic," or "delusional," "irrational" or "wholly incredible" -- in other words, frivolous.

Second, adding to the frivolous contents of the allegations, the Complaint also fails to state a claim on which relief can be granted under §1915(e)(2)(B)(ii).   A complaint fails to state a cause of action if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).   "While

legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).   Federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004).   In a civil rights action, courts have repeatedly stated that plaintiffs cannot rest § 1983 claims on a theory of respondeat superior.   Iqbal, 556 U.S. at 676 (vicarious liability is inapplicable to Bivens and §1983 suits).   As a result, the "plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." Id.

In this case, plaintiff has not alleged any specific facts relating to either of the named defendants.   Instead, plaintiff merely states that unnamed "executive employees of the federal government," who have violated his constitutional rights, are "acting in concert with the United States Attorney General."   Complaint 1-1, p. 23.   He provides no factual basis for this allegation and never even identifies the specific Attorney General who supposedly the unnamed executive employees were acting in concert.   Plaintiff also alleges that the "[t]he liability of the municipality or governmental entity named United States Attorney General's Office may arise from a decision of a final policy maker responsible for that activity which caused a constitutional deprivation." Id., p. 23.   But plaintiff alleges no decision any named Attorney General has made relating to his allegations.   Similarly, plaintiff contends that in an official capacity claim like his, the plaintiff "must assert a constitutional violation that resulted from local governmental custom or practice." Id. at 23-24.   Again, he fails to specify any custom or practice instituted by any named Attorney General or member of the FBI that resulted in a violation

of his rights.   Plaintiff merely strings together general statements of law without tying them to the named defendants.

In short, although plaintiff alleges that his First Amendment rights to free speech and religion have been violated by unnamed executive employees of the federal government, the Court has no basis from which it can discern a plausible claim that <u>any</u> individuals violated any First Amendment rights.

Third, there are no specific facts alleged involving Minnesota that could explain why this case is being venued in the District of Minnesota.

> A civil action may be brought in--
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Although plaintiff appears to believe that his case is a class action, he and all of the possible plaintiffs listed in the Complaint reside in Texas; the FBI office referenced by plaintiff is located in El Paso, Texas; the Attorney General is located in Washington, D.C., and all the events are alleged to have occurred in Texas.   Additionally, even if there were no district in which this action could be brought (which of course, is not the case, as the suit could be venued in Texas, where the alleged events supposedly took place), as set out below, plaintiff has alleged no facts to establish that defendants are subject to

personal jurisdiction within the District of Minnesota.   In short, plaintiff's fill-in-the-blank recitation of venue law -- in which he states that "(1) the respondants [sic] residency or place of business is within the geographic location of Fergus Falls MN, and that; (2) the respondants [sic] acts or omissions that give rise to the legal claims occurred from within the geographic location of Fergus Fall MN" (Complaint 1, p. 5) -- is belied by the facts he has alleged regarding himself, the other members of the "class," the location of the Attorney General and FBI, and the events he claims form the basis of his suit. .   There is no basis for asserting that the District of Minnesota is the proper venue for this suit.

Finally, no facts have been alleged that would allow this Court to find that personal jurisdiction can be obtained over the two defendants.   A two-step analysis is used to determine whether a court can properly exercise personal jurisdiction over a defendant. Northrup King v. Compania Productora Semillas, 51 F.3d 1383, 1387 (8th Cir. 1995). First, the court must consider whether personal jurisdiction can properly be exercised under the state law of the forum state; more specifically, whether jurisdiction exists under the state's "long-arm statute." Id.   "Second, the court's exercise of jurisdiction must be consistent with the due process clause of the Fourteenth Amendment." Id.   "Minnesota [state] courts have concluded that if a non-resident's contacts with [the] State satisfy due process, the Minnesota long-arm statute also is satisfied." Id.   The dispositive issue, therefore, is whether this Court can exercise personal jurisdiction over the named defendants without violating the protections afforded by the due process clause.

"Due process allows a court to exercise personal jurisdiction over a non-resident defendant only if doing so is consistent with traditional notions of fair play and substantial justice." Id., citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

The plaintiff must demonstrate that the non-resident defendant has had sufficient minimum contacts with the forum state such that the defendant "'should reasonably anticipate being haled into court there.'" Northrup King, 51 F.3d at 1387, citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291, 297 (1980).

In this case, the Court will not exercise personal jurisdiction over the United States Attorney General merely because he is the head of the Department of Justice. McCabe v. Basham, 450 F.Supp.2d 916, 925 (N.D. Iowa 2006) (stating that personal jurisdiction over two senior-level federal government officials cannot be premised solely on their supervisory status where there is a lack of supporting facts specific to events in case). See also Brooks v. McCord, 2013 WL 3967206 *2 (E.D. Ark. Apr. 1, 2013) (refusing to find personal jurisdiction over Attorney General of United States where complaint recites legal terms and phrases but fails to provide "coherent factual allegations"); Gonzalez v. Sanders, 2008 WL 3892082 * 4 (E.D. Ark. 2008) (Attorney General of United States had insufficient minimum contacts to establish personal jurisdiction "by virtue of his position alone"). Plaintiff may believe that there is a conspiracy between the "executive employees" and his named defendants but he makes no specific allegations that the named defendants took an active role in a conspiracy. McCabe 450 F.Supp.2d at 925 (noting that "a conspiracy on the part of out-of-state defendants to deprive Iowans of their constitutional rights could support a finding of jurisdiction" but refusing such a finding where there were no allegations that the senior level officials oversaw the acts at issue, gave instructions to subordinates, or were even aware such acts were going on). Therefore, plaintiff has failed to provide sufficient basis to establish personal jurisdiction over the United States Attorney General.

Likewise, as there are no facts alleged to identify any person employed by the FBI, this Court has no basis from which it could determine if personal jurisdiction over that person can be had.   Other than in the title and the section listing protected members of the proposed class, there is no other reference to any specific person at the FBI.   Again, plaintiff might believe that some members of the "organized group of executive employees of the federal government" are from the FBI but that is not a sufficient basis for this Court to exercise personal jurisdiction over unnamed persons at the FBI's El Paso Office.

For all of these reasons, the Court concludes that this action should be summarily dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) for frivolousness, and pursuant to 1915(e)(2)(B)(ii) because it fails to state a claim on which relief can be granted, venue in Minnesota is improper, and there is no personal jurisdiction over the named defendants.

## II.    FILING RESTRICTIONS

Plaintiff's litigious record leads this Court to conclude that his ability to file any further suits in this District should be limited.   The right of access to the courts does not guarantee anyone an unrestricted opportunity to file frivolous, malicious or abusive documents.   See In re Tyler, 839 F.2d 1290, 1292 (8th Cir. 1988) ("there is 'no constitutional right of access to the courts to prosecute an action that is frivolous or malicious'") (quoting Phillips v. Carey, 638 F.2d 207, 208 (10th Cir.), cert. denied, 450 U.S. 985 (1981)).   "Frivolous, bad faith claims consume a significant amount of judicial resources, diverting the time and energy of the judiciary away from processing good faith claims."   Tyler, 839 F.2d at 1292.   Such "excessive litigation" imposes "unnecessary burdens on, and the useless consumption of, court resources."   Id.

It is well accepted that where a party has demonstrated a pattern of frivolous, repetitious, malicious, vexatious, or harassing litigation, and where such litigation is likely to continue in the absence of equitable intervention, the court has the authority to enjoin that party from filing, continuing, or otherwise litigating his frivolous claims.  See 28 U.S.C. § 1651(a); see also Sassower v. Carlson, 930 F.2d 583, 584 (8th Cir. 1991) (requiring plaintiff who filed repeated, vexatious lawsuits to seek leave of court before filing any further suits in the District of Minnesota); Tyler, 839 F.2d at 1292, 1293 (A federal court "has authority to control and manage matters pending before it," and "may, in its discretion, place reasonable restrictions on any litigant who files non-meritorious actions for obviously malicious purposes and who generally abuses judicial process."); Zhang v. Equity Office Props. No. 06–2265 (MJD/AJB), 2007 WL 26324, at *11 (D. Minn. Jan. 3, 2007) (citing Stilley v. James, Nos. 02–2047, 02–2022, 2002 WL 31159298, at *2 (8th Cir. Sept. 30, 2002) (finding that when a litigant has frivolously litigated the same issues multiple times before, an injunction can be the appropriate remedy).

Plaintiff is not new to this Court.   He filed a frivolous lawsuit in this District in 2012. See Complaint, Flores v. United States Dep't of Health and Human Services, Civ. No. 12-2774 (D. Minn. Oct. 31, 2012) [Docket No. 1].   In that case, like the instant case, plaintiff repeatedly alleged that:

> [A]gents, officer[s], employees, or agencies [of the United States] are using advanced technology with a direct signal to the satellite in outerspace that has the capability of calculateing [sic] a genetic code to cause the petitioner and his immediate relatives severe physical and mental pain for long durations exceeding calendar years which was equivalent in intensity to organ failure, impairment of body functions, and death.

Report and Recommendation [Docket No. 3], p. 2 (quoting Complaint, [Docket No. 1],

p. 10). In dismissing the case, the Court noted that plaintiff had filed many other complaints in various federal courts across the country that had also been dismissed as frivolous. Id., p. 2 n. 1; Order adopting Report and Recommendation [Docket No. 4]. Similarly, in March of this year, the United States District Court for the Eastern District of Texas stated that the number of cases filed by plaintiff around the country had "actually reached approximately 140 similar lawsuits" and that many of them have been "dismissed for failure to state a claim and/or as frivolous." Flores v. United States Attorney General, 2015 WL 1088782, at *3 (E.D. Tex. March 4, 2015).[3] Additionally, the United States Judicial Panel on Multidistrict Litigation cautioned plaintiff in April, 2014, that "any further frivolous filings before the Panel may result in restrictions on his ability to file materials before the Panel." In Re: Eric Flores Litigation (No. II), 11 F.Supp.3d 1336, 1337 (Apr. 1, 2014).

In light of plaintiff's extensive record of frivolous filings in this District and other districts around the country, the Court finds that it is now necessary and appropriate to protect the District Court and its staff from any further abusive submissions by plaintiff. Therefore, before plaintiff can file any further suits in this Court, he must first obtain written permission from the Court to do so. The Clerk of Court shall not file, or respond to, any future submissions from plaintiff, except as directed by the Court.

---

[3] A review of this decision indicates that plaintiff has made many of the same bizarre allegations as he made in the instant Complaint. 2015 WL 1088782, at *1.

RECOMMENDATION

Based upon the foregoing and all of the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that:

1. Plaintiff's application to proceed in forma pauperis, [Docket No. 2], be DENIED; and

2. This action be summarily DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii).

3. Before plaintiff can file any further suits in this Court, he must first obtain written permission from the Court to do so. Therefore, the Clerk of Court shall not file, or respond to, any future submissions from plaintiff, except as directed by the Court.

Dated:        June 8, 2015

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

**NOTICE**

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **June 22, 2015**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.